The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick, the briefs on appeal and arguments of counsel. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award. Accordingly, the Opinion and Award by Deputy Commissioner Hedrick is affirmed. This case was heard before Deputy Commissioner Hedrick in Raleigh on 14 March 1995. After receiving the depositions of Drs. Jacobi, Siegel, Bevin and Ms. Ward-Ross, along with the parties' contentions, Deputy Commissioner Hedrick rendered his Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
STIPULATIONS
1. On 1 April 1993, the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. Defendant was self-insured.
4. On 1 April 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant.
5. Plaintiff's employment relationship with defendant last existed on 31 July 1994.
6. In lieu of temporary total disability compensation, defendant paid plaintiff her full salary for all periods that she was out of work due to her 1 April 1993 injury through the beginning of July 1994. The payments were made to plaintiff pursuant to defendant's ordinance and policies which provide for salary continuation to all employees who sustain a work-related injury or illness.
7. Plaintiff has received no compensation from defendant since the beginning of July 1994.
8. On 27 April 1994, Dr. Bevin rated plaintiff as having a twenty percent permanent partial disability of her right hand.
9. Plaintiff's Exhibits 1-28, as identified in the parties' Pre-Trial Agreement, were stipulated into evidence.
10. Defendant's Exhibits 1-6, as identified in the parties' Pre-Trial Agreement, were stipulated into evidence.
11. An Industrial Commission Form 22, Wage Chart, received by the Industrial Commission on 31 October 1995 (via facsimile), was stipulated into evidence.
EVIDENTIARY RULING
The objection appearing in the deposition of Dr. Jacobi is OVERRULED.
* * * * * * * * * * *
The Full Commission adopts the Findings of Fact found by Deputy Commissioner Hedrick, as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was thirty-seven years old. Plaintiff became employed as a police officer for defendant in May 1989. Plaintiff continued to be so employed by defendant until 1 August 1994. Although plaintiff was right hand dominant, she used her left hand for writing. Prior to 1 April 1993, plaintiff's average weekly wage was $539.63, which yields a compensation rate of $359.78.
2. On 1 April 1993, plaintiff responded to an emergency call involving an individual who was threatening to commit suicide. In the course of her response to the call, plaintiff's right wrist was lacerated by broken window glass. As a result of this incident, plaintiff sustained a partial laceration and hypertrophic scarring of her right flexor carpi radialis, a tendon in her right wrist which primarily controls wrist adduction and abduction.
3. On 4 May 1993, Dr. Gutter performed surgery on plaintiff's wrist to repair the lacerated flexor carpi radialis and remove scar tissue which had formed since the initial injury. Following her surgery, and through the date of the hearing in this matter, plaintiff continued having right wrist and hand pain. Plaintiff also sustained a diminution of her right hand dexterity. On various occasions, plaintiff also experienced hand weakness.
4. Plaintiff attempted to return to work in October 1993. Plaintiff's attempt to return to her regular full time patrol position was unsuccessful due to hand pain and weakness. Beginning 4 November 1993, plaintiff was restricted from patrol duty. After being restricted from regular duty, plaintiff worked in several light duty positions for defendant, the last of which involved investigating the backgrounds of potential employees of defendant's emergency communications center.
5. As a result of her injury and inability to return to her usual position, plaintiff became depressed. Due to her depression, which was exacerbated by being under surveillance by private investigators hired by defendant, plaintiff was hospitalized from 3 March 1994 until 11 March 1994. Plaintiff's hospitalization and treatment were authorized by defendant.
6. Following her discharge, defendant authorized plaintiff to continue receiving psychiatric counseling from Dr. Adland. Plaintiff continued to participate in physical therapy and receive treatment from the University of North Carolina Pain Clinic.
7. On 16 June 1994, plaintiff underwent a functional capacity examination. On that date, plaintiff was capable of the following lifting activities with her right hand.
 a) Up to seven pounds continuously (i.e. more than 66.66% of the time).
 b) Up to fourteen pounds frequently (i.e. up to 66.66% of the time).
 c) Up to twenty-six and one-half pounds occasionally (i.e. up to 33.33% of the time).
Plaintiff was restricted from any lifting of weight greater than twenty-six and one-half pounds.
8. In June 1994, defendant offered plaintiff a part-time, temporary, light duty position in defendant's police department. The position involved performing background investigations of potential police department employees. This position was not regularly maintained by defendant. Plaintiff's refusal of this position was justified.
9. From 30 June through 31 July 1994, plaintiff took sick leave from her position with defendant. During this period, defendant continued to pay plaintiff her usual salary, however, the salary she received was charged against her accumulated sick leave. The salary received during this period was not paid pursuant to defendant's salary continuation plan, Durham City Code, Section 14-10.
10. By letter dated 28 July 1994, defendant informed plaintiff that it was unable to place her in a position with job duties consistent with her physical limitations. By the same letter, plaintiff was presented with the options of resignation, medical disability retirement, or termination due to inability to perform her job. Plaintiff elected to accept medical disability retirement. Plaintiff's retirement benefits were paid from a retirement fund to which she had contributed eight percent of her gross salary during her employment with defendant.
11. Plaintiff worked for another employer from 1 August 1994 through 14 September 1994. Plaintiff's average weekly wage in this position was $146.25. Plaintiff terminated her employment with this employer to return to college and pursue a career as a landscape architect.
12. By letter dated 12 December 1994, defendant offered plaintiff a position as a meter reader trainee at a salary which was equal to or greater than the salary she earned prior to 1 April 1993. The meter reader trainee position was a job that was generally available in the competitive employment market.
13. The duties of a meter reader trainee required the employee to read 280 water meters per day. The water meters were located below ground inside boxes constructed of steel, concrete or plastic. The lids of the steel boxes weighed twenty pounds. Those of the concrete boxes weighed ten pounds and those of the plastic boxes weighed less than ten pounds. Between fifteen and twenty percent of the meter lids were constructed of steel.
14. By letter dated 14 December 1994, plaintiff declined defendant's offer of employment as a meter reader trainee. The duties of the meter reader trainee position defendant offered plaintiff were within her physical restrictions. Plaintiff's refusal of this employment offer was not justified.
15. At all times from 1 April 1993 through 29 June 1994, plaintiff received her full salary pursuant to defendant's salary continuation plan, Durham City Code, Section 14-10. Plaintiff received her full salary during her attempts to return to full duty, her attempts to return to light duty, and during the periods she was unable to work.
16. Durham City Code, Section 14-10, which is entitled "Salary Continuation for Job Disability with Approval [of] Workers' Compensation", provides in pertinent part as follows:
 a) Beginning with the first day of disability, employees disabled on the job, and for whom workers' compensation is approved, shall receive regular net pay and be granted leave without charge against accrued sick leave or annual leave for the full period covered by workers' compensation but not to exceed nine (9) calendar months; provided, that the amount of payment under workers' compensation shall be included in the computation of regular net pay. (emphasis added.)
17. From 2 April 1993 through 29 June 1994, all compensation plaintiff received from defendant was paid because plaintiff had been approved by defendant to receive workers' compensation. As set forth in the parties' stipulations, all payments were made to plaintiff in lieu of workers' compensation.
18. Although plaintiff's right hand pain and weakness waxed and waned, her symptoms never completely resolved. Periods of improvement in plaintiff's condition resulted from certain physical therapy activities, including swimming, and ganglion blocks.
19. Plaintiff's wrist injury reached maximum medical improvement on 27 April 1994. As a result of her injury on 1 April 1993, plaintiff has a twenty percent permanent partial disability of her right hand.
20. As a result of her injury on 1 April 1993, plaintiff was incapable of earning wages from defendant or any other employer from 2 April 1993 through 31 July 1994.
21. As a result of her injury on 1 April 1993, plaintiff's earning capacity from 1 August 1994 through 14 December 1994 was diminished by $393.39 per week ($539.64 — $146.25), which yields a compensation rate of $262.27.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 1 April 1993, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff is entitled to payment of temporary total disability compensation at the rate of $359.78 per week from 2 April 1993 through 31 July 1994. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of permanent partial disability compensation at the rate of $359.78 per week for forty weeks. N.C. Gen. Stat. § 97-31 (12).
4. Plaintiff's refusal to accept defendant's offer of employment as a meter reader trainee was unjustified and bars plaintiff from receiving additional disability compensation as a result of her injury on 1 April 1993. N.C. Gen. Stat. § 97-32.
5. Defendant is not entitled to a credit for the medical disability retirement benefits paid to plaintiff. N.C. Gen. Stat. § 97-42.
6. Defendant is not entitled to a credit for the payments made to plaintiff pursuant to Durham City Code, Section 14-10, from 2 April 1993 through 29 June 1994. N.C. Gen. Stat. § 97-42. Defendant is entitled to a credit for amounts received by plaintiff as wages earned from 2 April 1993 through 29 June 1994.
7. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred, as a result of her injury on 1 April 1993 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-2 (19); N.C. Gen. Stat. § 97-25.
8. Plaintiff is entitled to payment of all medical expenses incurred as a result of her hospitalization from 3 March 1994 until 11 March 1994. N.C. Gen. Stat. § 97-2 (19); N.C. Gen. Stat. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission affirms the holding of Deputy Commissioner Hedrick and enters the following:
AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $359.78 per week from 2 April 1993 through 31 July 1994, less the credit due defendant for wages earned by plaintiff during this period. This amount shall be paid in a lump sum, subject to the attorney's fee approved for plaintiff's attorney in paragraph 5.
2. Defendant shall pay plaintiff permanent partial disability compensation at the rate of $359.78 per week for forty weeks. This amount shall be paid in a lump sum, subject to the attorney's fee approved for plaintiff's attorney in paragraph 5.
3. Defendant shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of her injury on 1 April 1993 for so long as such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen her period of disability.
4. Defendant shall pay all medical expenses incurred by plaintiff as a result of her hospitalization from 3 March 1994 until 11 March 1994.
5. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraphs 1, 2 and 3 of this Award is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that amount and paid directly to plaintiff's attorney.
6. Defendant shall pay the costs, including expert witness fees of $165.00, $215.00 and $80.00 for Dr. Siegel, Dr. Bevin and Ms. Ward-Ross, respectively.
 S/ _________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ DIANNE C. SELLERS COMMISSIONER